## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————— X
:
**ANCORE ETERNE LLC** :
: **Case No.:**
    **Plaintiff,** :
:
**v.** :
: **JURY TRIAL DEMANDED**
:
**JOHN VIOLA** and :
**ITALIAN POWER PRODUCTIONS LLC** :
:
———————————————————————— X

## COMPLAINT

Plaintiff Ancore Eterne LLC ("Plaintiff"), by and through its undersigned attorneys, brings this action for copyright infringement against defendants John Viola ("Viola") and Italian Power Productions LLC ("Italian Power") (jointly, "Defendants"), and alleges as follows:

## THE PARTIES

1.      Plaintiff is a limited liability company duly formed under the laws for the Commonwealth of Pennsylvania.

2.      Upon information and belief, Defendant Viola is an individual residing in New York, New York. Viola is identified in filings with the United States Patent and Trademark Office ("USPTO") as the owner of the application to register the federal trademark for *The Italian American Podcast*, in which he provided a New York, New York address.

3.      Italian Power is a Delaware limited liability company with a principal place of business in New York, New York.

## JURISDICTION AND VENUE

4.      This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

5.      This Court has subject matter jurisdiction over Plaintiff's copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

6.      Venue is proper in this district under 28 U.S.C. §1391(b)(1)because the Defendants reside in this district. Alternatively, venue is proper in this district under 28 U.S.C. §1391(b)(2) as this is the district in in which a substantial part of the acts and omissions giving rise to the claims occurred.

7.      This Court has personal jurisdiction over Defendants because they are domiciled in New York, or, in the alternative, because they maintain continuous and systematic contacts with New York.

8.      Defendants produce their podcast in New York and conduct substantial business activities here, including targeting New York audiences through content regularly focused on Italian American culture in New York.

9.      In the alternative, Defendants are subject to personal jurisdiction in New York under CPLR § 302(a)(1) because they transact business within this State by producing and promoting *The Italian American Podcast* from Manhattan and by applying to register the trademark rights for *The Italian American Podcast* trademark from a New York address. These very business activities gave rise to the acts of copyright infringement and provision of false copyright management information alleged herein, as Defendants used the podcast's trademark

and branding in connection with the Infringing Copy (defined below) and disseminated it through their New York–based podcast operations.

10.    In the alternative, Defendants are subject to personal jurisdiction in New York under CPLR § 302(a)(2) because they committed tortious acts within this State by creating, branding, and disseminating the Infringing Copy from their Manhattan-based podcast operations. In particular, Defendants used Plaintiff's copyrighted photograph without authorization, affixed their *Italian American Podcast* trademark and logo as false copyright management information, distributed the resulting image as the official thumbnail and promotional material for Episode 327, and reproduced copies of the same on their website and social media pages.

## FACTS COMMON TO ALL COUNTS

11.    Plaintiff is the sole copyright owner of an original photograph titled *20181021_230424* (the "Subject Work").

12.    The Subject Work was authored by Francesca Siconolfi in October 2018.

13.    Ms. Siconolfi authored the Subject Work as part of a volunteer initiative to assist E. Rossi & Company— a housewares/gift shop owned and operated by Mr. Ernest Rossi ("Mr. Rossi") in New York's Little Italy— to develop online media materials with the goal of promoting the business.

14.    The Subject Work depicts Mr. Rossi, posed wearing a gold plastic costume crown —purchased by Ms. Siconolfi, and worn by Mr. Rossi at her direction—while holding ornamental horseshoes adorned with red amulets. The photograph captures Mr. Rossi's animated expression together with these symbolic accessories, arranged in a distinctive composition that reflects Ms. Siconolfi's creative choices in subject matter, pose, wardrobe, framing, and perspective.

15.    A copy of the Subject Work is depicted directly below:



16.    The Subject Work embodies numerous creative choices that reflect the photographer's original expression, captured with the goal of highlighting Mr. Rossi's personality and cultural identity. The placement of the crown, the symmetrical display of ornamental horseshoes and red amulets, and the capture of Mr. Rossi's animated expression all demonstrate the author's selection, coordination, and arrangement of visual elements. The angle, framing, lighting, and perspective further contribute to the unique aesthetic of the photograph.

17.    Upon creation, Ms. Siconolfi retained all rights, title, and interest in the Subject Work. Thereafter, pursuant to a written assignment, Ms. Siconolfi assigned to Plaintiff all right,

title, and interest in and to the Subject Work and all associated claims, including the right to sue for past, present, and future infringements.

18.    The Subject Work is registered with the U.S. Copyright Office under Registration Number VA-2-458-731 as part of a group of individual photographs.

19.    Viola knew that Ms. Siconolfi created these photographs, including the Subject Work, for the specific purpose of assisting E. Rossi & Company's online marketing.

20.    Without authorization, Defendants reproduced, altered, distributed, and publicly displayed the Subject Work in connection with Episode 327 of their podcast titled *The Italian American Podcast*.

21.    In particular, Defendants created an image featuring the Subject Work (the "Infringing Copy") as the thumbnail image for Episode 327 and in related social media posts.

22.    The Infringing Copy incorporates the central visual content of the Subject Work, including Mr. Rossi's pose, expression, attire, crown, and symbolic accessories, with only superficial modifications such as substitution of the background, lighting adjustments, and application of filters.

23.    Directly below is a reproduction of the Infringing Copy:



24.     Directly below is a side-by-side comparison of the Subject Work (left) and the Infringing Copy (right) demonstrates that the core expressive elements of the Subject Work were copied:

 

25.     As demonstrated above, numerous specific features of the Subject Work—including the arrangement of the symbolic accessories, the orientation of the amulets, and the motion blur and reflective highlights on the horseshoe in Mr. Rossi's left hand—are identically reproduced in the Infringing Copy.

26.     As demonstrated above, it is plainly evident that Defendants cropped Mr. Rossi directly from the Subject Work and applied only superficial edits to create the Infringing Copy.

27.     Defendants were fully aware they had no rights, license, or authorization to use the Subject Work.

28.     In October 2020, and in connection with other acts of infringement that are not the subject of this Complaint, Ms. Siconolfi sent Defendants a written communication asserting

her authorship and ownership of photographs she created in connection with her work at E. Rossi & Company, including the Subject Work.

29.    That communication advised Defendants that their use of Ms. Siconolfi's photographs was unauthorized and that DMCA takedown requests would follow.

30.    Following that communication, Ms. Siconolfi submitted DMCA takedown notices to various platforms specifically addressing Defendants' use of her photographs, including the Subject Work.

31.    Upon information and belief, and following submission of the DMCA takedown notices described above, Defendants received notifications from the platforms that the photographs were removed based on Ms. Siconolfi's copyright infringement claims.

32.    Despite this clear prior notice, Defendants elected to exploit the Subject Work by creating and disseminating the Infringing Copy.

33.    Upon information and belief, Viola is the sole owner and manager of Defendant Italian Power Productions LLC. As such, Viola exercises complete control over the operations of the company, including its podcast activities, marketing decisions, and the use of intellectual property.

34.    Upon information and belief, Viola was personally and directly involved in the infringing acts described herein.

35.    Upon information and belief, Viola selected and directed the use of the Subject Work to create the Infringing Copy, authorized the addition of Defendants' logo and podcast branding, and oversaw its dissemination as the thumbnail image for Episode 327 and related promotional posts.

36.     The Subject Work was publicly available online in connection with E. Rossi & Company's promotional materials, and Defendants were personally familiar with Mr. Rossi and his business.

37.     Viola collaborated with Ms. Siconolfi on a separate design project involving a t-shirt logo, also for the benefit of Mr. Rossi, evidencing Viola's familiarity with Ms. Siconolfi's creative work.

38.     Upon information and belief, Viola pursued his collaboration with Ms. Siconolfi, in part, to draw upon her creative expertise as he prepared to transition into influencer and media work in New York City. This motive further reflects Viola's familiarity with Ms. Siconolfi's portfolio and underscores the willful nature of Defendants' later exploitation of the Subject Work.

39.     Upon information and belief, Defendants obtained a copy of the Subject Work through those channels and used it as the basis for the Infringing Copy.

40.     Viola knew that Ms. Siconolfi had photographed Rossi for the express purpose of promoting E. Rossi & Company through online marketing. This knowledge provided Viola with direct awareness of the Subject Work's creation, intended use, and online availability, further evidencing Defendants' access to the Subject Work prior to creating the Infringing Copy.

41.     Additionally, the Subject Work and the Infringing Copy are strikingly similar: they share identical expressive elements—including Mr. Rossi's pose, expression, attire, crown, and the precise arrangement of horseshoes and amulets—such that independent creation is a virtual impossibility. The replication of unique photographic artifacts, such as the motion blur and reflective highlights on the horseshoe, confirms that the Infringing Copy was derived from the Subject Work.

42.     In early July 2025, Plaintiff, through counsel, sent Defendants a written cease-and-desist notice advising them of Plaintiff's ownership of the Subject Work, identifying Defendants' unauthorized use of the Infringing Copy, and demanding that such infringement cease immediately.

43.     Despite receiving this cease-and-desist notice, Defendants continued to reproduce, display, and distribute the Infringing Copy. The Infringing Copy remains publicly accessible on Defendants' website, social media accounts, and podcast platforms hosting *The Italian American Podcast*, where it appears in episode listings and thumbnails, and it has further proliferated onto third-party websites. Defendants' ongoing refusal to remove or disable access to the Infringing Copy perpetuates the infringement and causes continuing, irreparable harm to Plaintiff.

## DEFENDANTS' FALSE CMI

44.      Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

45.     Defendants affixed their *The Italian American Podcast* logo and name directly onto the Infringing Copy, used as the thumbnail image for Episode 327 and in related promotional posts.

46.     In doing so, Defendants provided copyright management information ("CMI") that was false, within the meaning of 17 U.S.C. § 1202(c), by identifying themselves and their podcast as the source, author, or owner of the Infringing Copy.

47.     The placement of Defendants' logo together with the text "The Italian American Podcast – Episode 327" on the Infringing Copy constitutes CMI.

48.    By branding the Infringing Copy with their podcast logo, name, and episode title, Defendants expressly signaled to the public that they were the source, author, or owner of the underlying content.

49.    Defendants knew that they were not the authors or copyright owners of the Subject Work because Ms. Siconolfi previously notified Defendants in writing that she was the author of the photographs she created for E. Rossi & Company, including the Subject Work, and that Defendants' past use of those photographs was unauthorized.

50.    Defendants' knowledge is further confirmed by Viola's knowledge that Ms. Siconolfi photographed Mr. Rossi in order to assist E. Rossi & Company's online marketing.

51.    In light of this history, Defendants acted knowingly and intentionally when they later affixed their own logo and name to the Infringing Copy.

52.    Defendants were fully aware that the work originated with Ms. Siconolfi and that they had no license or other right to claim to the public that they are the authors or owners of the Subject Work or Infringing Copy.

53.    Defendants further knew, or had reasonable grounds to know, that affixing their logo and podcast name to the Infringing Copy would conceal their infringement, mislead the public into believing that they had legitimate rights in the image, and facilitate broader distribution of the infringing content on podcast platforms and social media.

54.    In the ordinary course of online publishing, a logo, podcast name, and episode title placed on an image, signals to viewers that the underlying image was created by, or is owned by, the entity identified.

55.    Viewers encountering the Infringing Copy in podcast platforms, feeds, or social media promotions would reasonably understand the logo and episode text as a claim of

authorship and ownership, thereby concealing the true origin of the work and misleading the public as to its rightful owner.

56.     Defendants are well aware of the value of copyrights and intellectual property law more broadly, as evidenced by the copyright notice displayed on their own website and their history of filing multiple trademark applications and obtaining federal trademark registrations.

57.     Defendants' affirmative efforts to secure and enforce intellectual property rights for themselves underscore that their infringement of the Subject Work was knowing, willful, and undertaken with full appreciation of the protections afforded by federal law.

58.     Defendant knew, or should have known, that if it did not have the authority to exploit the Subject Work, that it should not have exploited the Subject Work, yet did so anyway.

59.     Defendant's unauthorized reproduction, distribution, exploitation, and public display of the Subject Work are knowing and willful and in reckless disregard of Plaintiff's copyrights.

60.     As a result of the conduct described herein, Defendant has harmed, and continues to harm, the potential market for or value of the Subject Work by robbing Plaintiff of exclusive rights to license the Subject Work for illustrative and other purposes.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.*)

61.     Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62.     Plaintiff is the sole owner of the Subject Work and holds a valid copyright registration accordance with the United States Copyright Act

63.     The Subject Work is copyrightable subject matter and an original work of authorship.

64.    Plaintiff has complied in all respects with the provisions and requirements of the Copyright Act.

65.    Plaintiff has the exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Work.

66.    Upon information and belief, Defendants accessed the Subject Work by viewing and downloading the Subject Work from the internet.

67.    Defendants had access to the Subject Work prior to creating the Infringing Copy, as evidenced by its availability through E. Rossi & Company's promotional materials and Defendants' familiarity with Mr. Rossi and his business.

68.    Defendant Viola had access to the Subject Work through his prior dealings with Ms. Siconolfi, with whom he maintained a direct line of communication and had previously collaborated on unrelated projects. These collaborations established a working relationship and familiarity with Ms. Siconolfi's photography portfolio, thereby providing Defendants with direct access to the Subject Work prior to creating the Infringing Copy.

69.    In any event, the Subject Work and the Infringing Copy are strikingly similar in their protectable expression, such that independent creation is impossible.

70.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work.  As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiff's rights in the Subject Work, in an amount to be established at trial.

71.    Defendant has committed copyright infringement with actual or constructive knowledge of Plaintiff's rights such that said acts of copyright infringement were willful,

reckless, malicious, and in blatant disregard of Plaintiff's rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

72.    Plaintiff claim all damages and remedies available under 17 U.S.C. §§504 and 505.

73.    Defendant has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

## COUNT II
## (CONTRIBUTORY COPYRIGHT INFRINGEMENT)

74.    Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

75.    Upon information and belief, one or more unknown third parties participated in the creation of the Infringing Copy by manipulating, altering, or otherwise reproducing the Subject Work for use as the Episode 327 thumbnail and related promotional materials.

76.    Upon information and belief, the third parties who manipulated and branded the Subject Work to create the Infringing Copy were contractors, employees, and/or production staff acting at Defendants' direction and subject to their approval processes.

77.    Upon information and belief, Defendants knew, or reasonably should have known, that these third parties relied upon the Subject Work as the source material in creating the Infringing Copy, given the striking similarity between the Subject Work and the Infringing Copy, as well as Viola's dealings with Ms. Siconolfi.

78.     Despite this knowledge, Defendants authorized and directed the use of company resources—including branding assets, production staff, and publishing accounts—to enable these third parties to create, brand, and disseminate the Infringing Copy.

79.     Defendants' authorization and provision of these resources materially contributed to the infringement; absent Defendants' approval and provisioning, the Infringing Copy would not have been created, branded, or distributed in connection with the podcast.

80.     Defendants' conduct was not passive; they knowingly induced and caused the infringing acts by providing essential authorization, direction, and resources.

81.     Defendants further ratified the infringing conduct by branding the Infringing Copy with their podcast name and logo, incorporating it into Episode 327, and disseminating it on podcast platforms and social media, thereby ensuring the continued public display and distribution of the infringing material.

82.     Defendants' contributory infringement was willful, deliberate, and undertaken with reckless disregard of Plaintiff's rights, as evidenced by (a) Viola's prior communications with Ms. Siconolfi concerning ownership and authorship of her photographs, (b) Ms. Siconolfi's prior written objections and DMCA takedown notices regarding Defendants' unauthorized use of her works, and (c) Defendants' decision to exploit the Subject Work despite this history and after receiving Plaintiff's cease-and-desist notice in July 2025.

83.     As a direct and proximate result of Defendants' contributory infringement, Plaintiff has suffered, and continues to suffer, damages in an amount to be determined at trial, including lost licensing opportunities and diminution of the value of the Subject Work.

84.     Plaintiff claims all damages and remedies available under 17 U.S.C. §§504 and 505.

85.     Defendant has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

### COUNT III
### (VICARIOUS COPYRIGHT INFRINGEMENT)

86.     Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

87.     Defendants have the right and ability to supervise, control, and direct the infringing conduct alleged herein. Defendant Viola is the sole owner and manager of Italian Power Productions LLC, and exercises complete control over its podcast operations, marketing decisions, and use of intellectual property.

88.     Viola exercised complete control over Italian Power Productions LLC, including the authority to supervise, approve, or prevent the use of artwork and promotional materials for *The Italian American Podcast*.

89.     Italian Power Productions LLC likewise had direct control over The Italian American Podcast, including the selection and dissemination of episode thumbnails and promotional images, and therefore had the right and ability to prevent the infringing conduct but chose not to.

90.     Viola's position as sole owner and manager gave him the right and ability to supervise the infringing acts alleged herein, yet he failed to do so and instead ratified the use of the Infringing Copy.

91.     Defendants derived a direct financial benefit from the infringement. The use of the Infringing Copy to promote Episode 327 enhanced the attractiveness of the podcast to

audiences, increased listenership and engagement, and in turn bolstered Defendants' advertising and sponsorship value, as well as goodwill associated with *The Italian American Podcast*.

92.     Defendants' failure to exercise their right and ability to supervise or prevent the infringing conduct, while simultaneously profiting from the increased value and visibility of their podcast, renders them vicariously liable for infringement of the Subject Work.

93.     Defendants' vicarious infringement was willful, deliberate, and undertaken with reckless disregard of Plaintiff's rights, their history of unauthorized use of her works, and their continued use of the Subject Work after receipt of Plaintiff's cease-and-desist notice in July 2025.

94.     As a direct and proximate result of Defendants' vicarious infringement, Plaintiff has suffered, and continues to suffer, damages in an amount to be determined at trial, including lost licensing opportunities and diminution in the value of the Subject Work.

95.     Plaintiff claims all damages and remedies available under 17 U.S.C. §§504 and 505.

96.     Defendant has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

## COUNT IV
## (PROVIDING FALSE COPYRIGHT MANAGEMENT INFORMATION – 17 U.S.C. §1202(a))

97.     Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

98.    As alleged above, Defendants affixed their podcast name and logo directly onto the Infringing Copy.

99.    The podcast name and logo constitute CMI.

100.    Defendants knew that this CMI was false because they were not the authors or copyright owners of the Subject Work, had previously been notified in writing by Ms. Siconolfi of her authorship, and were aware that they lacked any license or authorization to claim ownership or authorship.

101.    Defendants intentionally provided this false CMI to conceal their infringement, to mislead the public into believing that they were the rightful source or owner of the Subject Work, and to facilitate the broad dissemination of the Infringing Copy across podcast platforms and social media.

102.    Defendants' conduct was willful, deliberate, and in reckless disregard of Plaintiff's rights, as evidenced by their prior notice of ownership, their deliberate branding of the Infringing Copy with their own identifiers, and their continued public display of the Infringing Copy after receipt of past cease-and-desist notices.

103.    As a direct and proximate result of Defendants' violations of 17 U.S.C. § 1202, Plaintiff has suffered and continues to suffer damages, including loss of credit, loss of licensing opportunities, and diminution of the Subject Work's value.

104.    Plaintiff is entitled to all remedies provided under 17 U.S.C. § 1203, including actual damages, disgorgement of Defendants' profits, statutory damages, costs, and attorneys' fees, as well as injunctive relief to prevent further violations.

### COUNT V
**(CONTRIBUTORY LIABILITY FOR PROVIDING/DISTRIBUTING FALSE COPYRIGHT MANAGEMENT INFORMATION – 17 U.S.C. §1202(a))**

105.    Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

106.    As alleged above, one or more third parties participated in creating the Infringing Copy by manipulating, altering, or otherwise reproducing the Subject Work, and in doing so affixed Defendants' podcast name and logo.

107.    Defendants knew, or reasonably should have known, that these third parties affixed and disseminated false CMI identifying Defendants and their podcast as the source or owner of the Infringing Copy.

108.    Despite this knowledge, Defendants intentionally induced, caused, and materially contributed to the provision and distribution of false CMI by supplying company resources—including branding materials, logos, podcast identifiers, and distribution platforms—and by authorizing the use of those resources in connection with the Infringing Copy.

109.    Defendants' authorization and provision of resources materially contributed to the creation, provision, and dissemination of false CMI, without which the Infringing Copy could not have been branded with the false CMI.

110.    Defendants knew, or had reasonable grounds to know, that their conduct would induce, enable, and facilitate infringement by misleading audiences and third parties into believing that Defendants were the authors or owners of the Subject Work, thereby concealing Plaintiff's ownership and perpetuating unauthorized use.

111.    Defendants' contributory provision of false CMI was willful, deliberate, and undertaken with reckless disregard of Plaintiff's rights, as shown by (a) their prior notice of Ms. Siconolfi's authorship and ownership, (b) prior DMCA takedown notices concerning their

unauthorized use of her works, and (c) their decision to brand and distribute the Infringing Copy despite Plaintiff's cease-and-desist notice in July 2025.

112.    As a direct and proximate result of Defendants' contributory violations of 17 U.S.C. § 1202, Plaintiff has suffered and continues to suffer damages, including loss of attribution, loss of licensing opportunities, and diminution in the value of the Subject Work.

113.    Plaintiff is entitled to all remedies available under 17 U.S.C. § 1203, including actual damages, disgorgement of Defendants' profits, statutory damages, costs, and attorneys' fees, as well as injunctive relief to prevent further violations.

### <u>COUNT VI</u>
### (VICARIOUS LIABILITY FOR PROVIDING/DISTRIBUTING FALSE COPYRIGHT MANAGEMENT INFORMATION – 17 U.S.C. §1202(a))

114.    Plaintiff repeats, realleges, and incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

115.    Defendants are vicariously liable for violations of 17 U.S.C. § 1202 because they had the right and ability to supervise or control the acts of third parties who affixed and disseminated false CMI on the Infringing Copy, and they derived a direct financial benefit from that conduct.

116.    Defendant Viola, as sole owner and manager of Italian Power Productions LLC, exercised ultimate authority over podcast operations, promotional materials, and branding decisions, including the provision and use of logos, names, and episode titles in connection with the Infringing Copy. Viola therefore had the right and ability to supervise, approve, or prevent the provision of false CMI but failed to do so.

117.    Italian Power Productions LLC controlled the production, branding, and distribution of The Italian American Podcast, and likewise had the ability to supervise or prevent the use of false CMI, but instead ratified and benefited from it.

118.    Defendants derived a direct financial benefit from the provision/distribution of false CMI, as the branding of the Infringing Copy with Defendants' logo and name attracted and engaged audiences, and thereby increased the value of Defendants' podcast through listenership, advertising, sponsorships, and goodwill.

119.    Defendants' failure to exercise their right and ability to supervise or prevent the provision of false CMI, while simultaneously profiting from its dissemination, renders them vicariously liable for violations of 17 U.S.C. § 1202.

120.    Defendants' vicarious liability for providing false CMI was willful, deliberate, and undertaken with reckless disregard of Plaintiff's rights, as evidenced by their prior notice of Ms. Siconolfi's ownership, their history of unauthorized uses of her works, and their continued use of false CMI after receipt of Plaintiff's cease-and-desist notice in July 2025.

121.    As a direct and proximate result of Defendants' vicarious violations of 17 U.S.C. § 1202, Plaintiff has suffered and continues to suffer damages, including loss of attribution, loss of licensing opportunities, and diminution in the value of the Subject Work.

122.    Plaintiff is entitled to all remedies provided under 17 U.S.C. § 1203, including actual damages, disgorgement of Defendants' profits, statutory damages, costs, and attorneys' fees, as well as injunctive relief to prevent further violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ancore Eterne LLC respectfully requests that this Court enter judgment in its favor and against Defendants John Viola and Italian Power Productions LLC, jointly and severally, as follows:

A. A permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, successors, assigns, and all persons acting in active concert or participation with them, from directly or indirectly infringing Plaintiff's exclusive rights in the Subject Work;

B. A permanent injunction enjoining Defendants from providing, distributing, or authorizing false copyright management information in violation of 17 U.S.C. § 1202;

C. An order requiring Defendants to remove all copies of the Infringing Copy and any other unauthorized reproductions, derivatives, or displays of the Subject Work from all websites, podcast platforms, and social media accounts under their control, and to publish corrective attribution identifying Plaintiff as the copyright owner where feasible;

D. An award of Plaintiff's actual damages suffered as a result of Defendants' copyright infringement, together with all profits of Defendants attributable to the infringement pursuant to 17 U.S.C. § 504(b), or, if available, statutory damages for each act of infringement in accordance with 17 U.S.C. § 504(c), enhanced for willful infringement;

E. An award of Plaintiff's actual damages and Defendants' profits attributable to Defendants' violations of 17 U.S.C. § 1202, or, in the alternative, statutory damages for each violation in an amount of not less than $2,500 and not more than $25,000 per violation pursuant to 17 U.S.C. § 1203(c)(3)(B);

F.  An award of Plaintiff's costs and reasonable attorneys' fees, as available under 17 U.S.C.

§§ 505 or 1203(b)(4)–(5);

G.  An award of pre-judgment and post-judgment interest as allowed by law; and

H.  Such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Respectfully submitted,

Date:  September 19, 2025

By:    */s/ Dmitry Lapin*
Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570

*Attorney for Plaintiff*